**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAVID AARON TENENBAUM and
MADELINE GAIL TENENBAUM,

        Plaintiffs,

v.                                    Case No. 09-10612

JOHN ASHCROFT, PAUL WOLFOWITZ,
ULDRIC FIORE, JOHN SIMONINI,
ALBERT D. SNYDER, MARK P.
YOURCHOCK, and ROBERT M. RILEY.

        Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the court is Plaintiffs' claim that Defendants denied them their constitutional right of access to the courts. Defendants have filed a "Motion to Dismiss First Amended Complaint Or In The Alternative For Summary Judgment." The matter has been fully briefed, and the court conducted a hearing on the matter on July 15, 2009. Plaintiffs' claim is barred under the doctrines of *res judicata* and collateral estoppel, and for the reasons stated below the court will grant Defendants' motion.

### I. BACKGROUND

On October 14, 1998, Plaintiff David Aaron Tenenbaum, an engineer and employee of the United States Army Automotive Armaments Command ("TACOM"), and his wife, Plaintiff Madeline Gail Tenenbaum, initiated in this court an action claiming discriminatory disparate treatment based upon religion against Defendants John Simonini, Albert Snyder, Mark Yourchock, and Robert Riley (collectively, "Original

Defendants").[1]  The court set forth the facts which gave rise to the previous action as

follows:

> "[Plaintiff] came under suspicion with respect to his relationship with
> engineers and other representatives of the Israeli armed forces, especially
> the Israeli Liaison officer to TACOM.  Defendant Simonini considered
> Plaintiff a potential security risk.  When Plaintiff requested a higher
> security classification, he was subject to a more intense scrutiny than was
> normally the case, including a polygraph examination.  In the course of the
> examination, according to the examiner, Plaintiff made certain
> incriminating verbal statements relating to providing classified information
> to unauthorized persons.  Plaintiff says that he never made such
> statements, and that the report of them is part of the discriminatory,
> conspiratorial vendetta against him.  In any event, it is clear that
> Defendants became more highly concerned after hearing the report of the
> examiner, and stepped up the investigation into Plaintiff's activities.  A
> federal search warrant was sought and obtained, and Plaintiff's home was
> searched.  Plaintiff was placed on paid leave for over a year, and
> ultimately no criminal charges were brought against him."

*Tenenbaum v. Lt. Col. John Simonini*, 98-CV-74473, 2-3 (E.D. Mich. Sept. 30, 2002)

(Pl.'s Ex. 2.).

 The 1998 lawsuit included the following claims against the Original Defendants:

(1) *Bivens* claims for violating and engaging in a conspiracy to violate Plaintiffs' Fourth

Amendment rights by subjecting them to an unreasonable search and seizure without

probable cause; (2) common law conspiracy in unlawfully investigating Plaintiff and

manufacturing and attributing false confessions to Tenenbaum to finally justify an FBI

criminal investigation; (3) defamation; (4) gross negligence; and (5) loss of consortium.

The defendants in the 1998 lawsuit moved for summary judgment, and this court

granted summary judgment, accepting the defendant's argument that they could not

---

[1]Madeline Tenenbaum's claims were derivative in nature and thus the parties
sometimes refer to Plaintiffs, collectively or individually as to David Tenenbaum, in the
singular form as "Plaintiff."

defend themselves against Plaintiffs' claims without disclosing information protected by the state secrets privilege.  On May 19, 2004, the Court of Appeals for the Sixth Circuit affirmed on the same basis.  The Supreme Court declined to grant certiorari on November 29, 2004.

On March 14, 2006, a United States Senator, Carl Levin, signed a letter requesting that the Department of Defense conduct an investigation into the Plaintiffs' allegations.  (Pl.'s Ex. 1 at 40-41.)   After conducting its investigation of classified and unclassified material and information, the Department of Defense issued a report on July 13, 2008, finding that Plaintiff David Tenenbaum's race and ethnicity contributed to the "unusual and unwelcome scrutiny" into his affairs.  (*Id.* at 27.)  According to Plaintiffs, the report also found that Plaintiff David Tenenbaum was the victim of religious discrimination and that no evidence was found that would have supported the originally contemplated accusations against him.

Plaintiffs then initiated the instant case against the same Defendants who were named in the 1998 lawsuit and added three Defendants: former Attorney General John Ashcroft, former Deputy Secretary of Defense Paul Wolfowitz, and  Uldric Fiore as the former Army Litigation Division Chief and General Counsel, Department of Defense Office of the Inspector General.  The complaint contains only one count, asserted pursuant to *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388 (1971). Plaintiffs allege that Defendants deprived Plaintiffs of their right of access to the courts by falsely invoking the state secrets doctrine in the first lawsuit.

Defendants move to dismiss the complaint on grounds that Plaintiffs' claim is barred by *res judicata*, collateral estoppel, and the statute of limitations.  Defendants

3

also assert that Plaintiffs' complaint should be dismissed for lack of personal and subject matter jurisdiction and its failure to state a claim.  Plaintiffs oppose the motion.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants contend that Plaintiffs' claim should be dismissed for lack of subject matter jurisdiction because Plaintiff has not cited a waiver of sovereign immunity for claims made against Defendants in their official capacities.  The doctrine of sovereign immunity provides that the sovereign cannot be sued except when it consents to be sued.  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Sovereign immunity applies to suits in which the United States is a named defendant as well as to suits in which a federal agency or its officials are named defendants.  *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  In such suits, the plaintiff bears the burden of establishing waiver of sovereign immunity.  *Clark v. State of Washington,* 366 F.2d 678 (9th Cir. 1966); *Knox v. The Regents of the Univ. of Wisconsin*, 385 F.Supp. 886, 887 (E.D. Wis. 1975); *Brown Bros. Equip. Co. v. State of Michigan,* 266 F.Supp. 506 (W.D. Mich.1967).

However, nowhere in the amended complaint do Plaintiffs mention or suggest that their claim is a claim against Defendants in their official capacities; indeed, Plaintiffs clarify in their response that this *Bivens* action is against Defendants in their individual capacities.  The court therefore maintains subject matter jurisdiction over this dispute, and Defendants' argument with respect to lack of subject matter jurisdiction is inapposite.

4

### B.  Personal Jurisdiction

Next, Defendants contend that this court does not have personal jurisdiction over Defendant Fiore.  "The burden of establishing jurisdiction is on the plaintiff."  *Tobin v. Astra Pharm. Prod., Inc*., 993 F.2d 528, 543 (6th Cir. 1993).  If the district court does not conduct an evidentiary hearing on the matter of personal jurisdiction, the plaintiff must make only a prima facie showing of jurisdiction.  *See Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998).  In such a case, the plaintiff must "'demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.'" *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir. 1980) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  Further, a court does not weigh the controverting assertions of the party seeking dismissal.  *Dean,* 134 F.3d at 1272 (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996)).

Personal jurisdiction can be established in two manners:

"'[G]eneral' jurisdiction, which depends upon a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and 'specific' jurisdiction, which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum."

*Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147, 149 (6th Cir. 1997) (citations omitted).  The Due Process Clause dictates that before a court may exercise personal jurisdiction over a nonresident defendant, the defendant must have sufficient minimum contacts with the forum state so as to not offend traditional notions of fair play and substantial justice.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *Burger*

5

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  For personal jurisdiction to be proper, "there [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1985) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

Under Michigan's long-arm statute, personal jurisdiction exists where a defendant: (1) transacts any business within the state; or (2) does or causes an act to be done, or consequences to occur, in the state resulting in an action for tort.  *See* Mich. Comp. Laws § 600.705(1)-(2).  The Sixth Circuit has held that three factors are assessed in determining personal jurisdiction: (1) whether the defendant purposefully availed himself of acting in the forum state or causing a consequence in the forum state; (2) whether the cause of action arose in the forum state from the defendant's act; and (3) whether the consequences from the defendant's act have a substantial enough connection with the forum state to make jurisdiction reasonable.  *See Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991) (citations omitted).

Defendants argue that there are absolutely no allegations suggesting that Defendant Fiore engaged in any activities that would endow a court sitting in Michigan with personal jurisdiction over him.  Plaintiffs assert in their answer to Defendants' motion, that Fiore filed the Motion for Summary Judgment moving for the dismissal of the 1998 lawsuit by asserting the state secrets privilege.

Inasmuch as Plaintiffs' claim in the instant action is predicated upon Defendants' assertion of state secrets privilege, this court maintains jurisdiction over Defendant Fiore

who, according to Plaintiffs, played a significant role in asserting the state secrets privilege in the 1998 lawsuit. Defendants' assertion of the state secrets privilege, the consequence of which was this court's dismissal of the 1998 lawsuit, is the central component to the instant action. Defendant Fiore's alleged involvement in the assertion of the state secrets privilege constitutes purposeful availment sufficient to establish personal jurisdiction over him. Further, the damages which Plaintiffs allege arose in Michigan. For these reasons, this court maintains personal jurisdiction over Defendant Fiore.

## C. *Res Judicata* and Collateral Estoppel

Defendants contend that this action is based upon the same set of facts that gave rise to Plaintiff's 1998 lawsuit, and that the order dismissing the prior action bars litigation of the claims raised in the instant action. "The doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Under the doctrine of *res judicata*, a party is precluded from bringing a claim when there exists "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies['] (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action." *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007) (alteration in original) (quoting *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir.

7

2003)).

The doctrine of collateral estoppel, or issue preclusion, "dictates that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Aircraft Braking Systems Corp. v. Local 856, Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  The Sixth Circuit has found four criteria necessary to preclude further litigation under the doctrine of collateral estoppel: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Bills v. Aseltine*, 52 F.3d 596, 604 (6th Cir. 1995) (citing *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987)).

In the instant action, Plaintiffs claim that Defendants deprived them of their fundamental Constitutional right to have adequate, effective and meaningful access to the courts by falsely asserting the state secrets privilege in the 1998 lawsuit.  Plaintiffs are, however, collaterally estopped from relitigating the propriety of the assertion of the state secrets doctrine.  This issue was raised and litigated in the 1998 lawsuit, resulting in a dismissal precisely because of the state secrets doctrine.  Plaintiffs, against whom collateral estoppel is being applied, were both parties to the 1998 lawsuit.

8

In the 1998 lawsuit, the court explained the state secrets doctrine as follows:

The state secrets doctrine is based upon the states secret privilege, which protects against disclosure of information that may adversely affect national security interests.  This privilege "head[s] the list" of evidentiary privileges.  *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978).  The Executive Branch may invoke the privilege where the disclosure of state secrets could harm the nation's defense capabilities, disclose intelligence-gathering methods or capabilities, or disrupt diplomatic relations with foreign governments.  See *Ellsberg v. Mitchell*, 709 F.2d 51, 56-57 (D.C. Cir. 1983).

The government is given broad latitude with respect to the circumstances in which it may invoke the privilege.  *See Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 546-47 (2d Cir. 1991).  Indeed, the government may invoke the privilege to protect even unclassified information.  *Maxwell v. First Nat'l Bank of Maryland*, 143 F.R.D. 590, 596 n.6 (D. Md. 1992), aff'd, 998 F.2d 1009 (4th Cir. 1993).  Additionally, courts will uphold a claim of privilege for information that may seem harmless standing alone, but that, when added to other information, poses a reasonable danger of divulging too much to a "sophisticated intelligence analysis." *In re United States*, 872 F.2d 472, 475 (D.C. Cir. 1989) (citing *Halkin*, 598 F.2d at 10).  Accordingly, in reviewing the assertion of the state secrets privilege, a court's standard of review "is a narrow one.  Courts should accord the 'utmost deference' to executive assertions of privilege upon grounds of military or diplomatic secrets."  *Halkin*, 598 F.2d at 9 (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).  As stated by the Supreme Court,

> [t]he decisions of the Director [of Central Intelligence], who must of course be familiar with "the whole picture," as judges are not, are worthy of great deference given the magnitude of the national security interests and potential risks at stake.  It is conceivable that the mere explanation of why information must be withheld can convey valuable information to a foreign intelligence agency. . . .  And it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process.

*Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 179-80 (1985).

(9/3/02 Order at 3-4.)  The court continued, stating:

9

> Where the very subject matter of an action is a state secret, dismissal of the entire complaint is warranted.  *See United States v. Roberts*, 345 U.S. 1, 11 n.26 (1953) (citing *Totten v. United States*, 92 U.S. 105 (1875) as an example of such a dismissal); *see also Kasza v. Browner,* 133 F.3d 1159, 1170 (9th Cir. 1998) ("Not only does the state secrets privilege bar Frost from establishing her *prima facie* case on any of her eleven claims, but any further proceeding in this matter would jeopardize national security . . . . Therefore, as the very subject matter of Frost's action is a state secret, we agree with the district court that her action must be dismissed.");  *Black v. United States,* 62 F.3d 1115, 1119 (8th Cir. 1995) (finding dismissal appropriate, where the "information covered by the privilege is at the core of [the plaintiff's] claims, and we are satisfied that the litigation cannot be tailored to accommodate the loss of the privileged information.").

(*Id.* at 5-6.)

In the 1998 lawsuit, the court applied this body of law in finding that the state secrets doctrine prohibited the case from proceeding.  The court held that "after reviewing the numerous classified declarations and documents which were filed under seal, the court is firmly convinced that the state secrets doctrine applies in this case and makes dismissal necessary."  (*Id.* at 7.)  The court found that if it "were to allow any claim to proceed, . . . Defendants could not adequately defend against Plaintiff's assertions, because such defense would entail disclosure of facts which would create a reasonable, if not certain, danger to national security."  (*Id.* at 9.)  The court's conclusions were upheld by the Sixth Circuit, and the Supreme Court declined to grant certiorari.  At every stage of the litigation, Plaintiffs were represented by counsel and actively opposed the invocation of the state secrets doctrine.  The issue of the applicability of the state secrets doctrine, therefore, was fully litigated in the 1998 lawsuit.

Plaintiffs, in their response to Defendant's motion, rely exclusively upon *Kremer*

10

*v. Chemical Constr. Corp.*, 456 U.S. 461 (1982), in contending that the doctrines of *res judicata* and collateral estoppel do not apply in this case, arguing that they were never afforded an opportunity to fully or fairly litigate the 1998 lawsuit.  While the Court noted in *Kremer* that *res judicata* and collateral estoppel do not apply where losing parties did not have a full and fair opportunity to litigate the claim or issue, the Court also clarified that "[r]edetermination of issues is warranted if there is a reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."  *Id.* at 481 (quoting *Montana v. United States*, 440 U.S. 147,164, n.11 (1979)).

Plaintiffs argue that they were not allowed the opportunity to fully and fairly litigate the 1998 lawsuit because the sealed affidavits which the court reviewed to determine the applicability of the state secrets doctrine were not disclosed to them. Plaintiffs further argue that "the Department of Defense has officially revealed in its formal Report after a comprehensive, independent investigation that 'no evidence supported the accusations against Tenenbaum,' thereby exposing the Sealed Affidavits as false."  (Pls.' Resp. at 14, emphasis omitted.)  However, the focus of the court's inquiry here is not on whatever merits the prior lawsuit itself may have had, but on whether Plaintiffs had an opportunity to oppose and litigate the applicability of the state secrets doctrine.

Plaintiffs assert what the court views as a string of arguments that employ entirely misguided logic and are premised on faulty legal reasoning.  Plaintiffs first contend that because the Department of Defense has allegedly cleared Tenenbaum of any illegal espionage activity, then Defendants' investigations into Tenenbaum's

11

activities and alleged accusations were necessarily discriminatory.  Plaintiffs extrapolate that because Defendants' actions were necessarily discriminatory then they must have submitted false affidavits to the court in the 1998 lawsuit and the state secrets doctrine was therefore improperly invoked.  Plaintiffs finally assert that because the state secrets doctrine, premised on false affidavits, was improperly invoked, the 1998 lawsuit was not fully and fairly litigated and thus has no preclusive effect on this litigation.  Each step of this argument, however, is infused with problems.

As an initial concern, in order to accept each step of Plaintiffs' reasoning, the court must accept the underlying premise that Department of Defense findings have some kind of precedential impact on this court's prior opinion, as affirmed by the 6th Circuit.  Plaintiffs have neither argued nor shown what impact, legally,[2] a letter authored by a member of Congress or a Department of Defense report could have on the finality of this court's 2002 opinion, as affirmed by the Sixth Circuit.  There are, of course, substantial differences between an agency inquiry and a federal court case in evidentiary and procedural practices and in the materials reviewed.[3]  Plaintiffs have

---

[2]The court stresses that it is concerned about the legal impact of the administrative or congressional proceedings, not the exact nature or import of the factual findings of the proceedings.  This is not a situation where additional discovery is necessary to flesh out the facts of the case.

[3]There is no indication, for example, that the Department of Defense had access to all, or indeed any, of the materials this court reviewed under seal.  In fact, the report itself contains a "Limitation to Scope," which qualifies, among other things, that the Department of Defense "did not review the actions taken by the Department of Justice or the FBI" and, although requested, the Department of Defense did not receive a copy of the unredacted case documentation filed by the FBI in the previous litigation.  (*See* Pls.' Resp. Ex. 1 at 38.)  The report specifically states that "we were unable to perform a comprehensive review of the state secrets documents related to the case dismissal." (*Id.*)

12

provided the court with no authority suggesting that a subsequent administrative or

congressional proceeding may somehow invalidate or effectively overrule an Article III

court's judgment. Indeed, the report itself disclaims any similar import or interpretation.

(*See* Pls.' Resp. Ex. 1 at 38, "Additionally, our review should not be construed as

commenting on the judicial decisions rendered in the Complainant's civil litigation.")[4]

Thus, Plaintiffs' arguments all rest on a shaky, if not imaginary, premise that a

Department of Defense report can be relied upon to cast doubt upon this court's

previous holdings.

Moreover, even if the subsequent Department of Defense report were seen as

having some impact on this court's 2002 opinion, the court cannot accept any step of

Plaintiffs' arguments, as each is factually and legally untenable.  First, the court does

not accept the proposition that if the Department of Defense report cleared Tenenbaum

of any illegal espionage activity, as Plaintiffs assert, then Defendants' investigations into

Tenenbaum's activities and alleged accusations were *necessarily* discriminatory.

Plaintiffs assume throughout their arguments that if Tenenbaum could only prove he did

not engage in espionage activities then Defendants necessarily discriminated against

him.  This, however, is not so.  It is feasible that Tenenbaum could have been

---

[4] It strikes the court that there may be serious separation of powers issues
inherent in such an argument, although the parties have not directly briefed this issue.
Such issues may have motivated the Department's report so specifically disavowing any
implication that its comments or conclusions might have been seen as having criticized
court rulings. Senator Levin, as well, pointed out in his letter calling for the investigation
that it should be accomplished "without the disclosure of any classified information,"
thus indicating that earlier court review and determination based upon such materials
would not be implicated.

completely innocent of any illegal behavior and simultaneously feasible that, despite

this, Defendants' inquiries into his behavior did not constitute *illegal* discrimination.  The

merits of the investigations into Plaintiffs' affairs and accusations against Plaintiffs are

not necessarily determinative of the merits of the discrimination action against

Defendants.  It is simply a false argument to imply, as Plaintiffs certainly do, that an

investigation must be void *ab initio* where the eventual result of the investigation serves

to clear the person suspected.[5]   The Department of Defense report cannot be relied

upon to show Defendants' liability under Title VII.[6]

Similarly problematic is Plaintiffs' second step to their argument, that because

Defendants' actions were necessarily discriminatory then they must have submitted

false affidavits to the court in the 1998 lawsuit, resulting in the state secrets doctrine

being improperly ("falsely") invoked.  Plaintiffs' counsel attempted to elucidate this

theory at the July 15, 2009 hearing, explaining that because the Department of Defense

_____

[5]Indeed, law enforcement officers may investigate even claims the legitimacy of which may be doubtful and which ultimately uncover nothing, and still act properly.  A federal grand jury may investigate aggressively but nonetheless return a no true bill in the event that the investigation reveals excusable, not criminal, activity. Such investigations are not rendered improper by virtue of their results.

[6]The court recognizes that the report also found that Tenenbaum was the subject of "inappropriate treatment" (Pl.'s Resp. Ex. 1 at i) and that his "religion and ethnicity was a factor or indicator in the decision to continue the inappropriate [Personnel Security Investigation]."  (*Id.* at 25.) However, the finding of "inappropriate" behavior, in this context, does not necessarily equate to legal discrimination, as defined under Title VII.  The report states, relating to the investigation of Plaintiffs, that "[t]his unusual and unwelcome scrutiny because of his faith and ethnic background would undoubtedly fit a definition of discrimination, *whether actionable or not.*"  (Pl.'s Resp. Ex. 1 at 27.)  Thus, the report itself was not directed at determining whether Defendants actions constituted discrimination under Title VII, only at whether the Department of the Army and Defense Investigative Service officials handled Tenebaum's situation *properly*, not necessarily whether they handled it inconsistently with prevailing legal standards.

14

allegedly found that Defendants acted discriminatorily (which, as stated above, the court does not necessarily accept) then they had no defense to Plaintiffs' 1998 action. Counsel suggests that, therefore, the invocation of the state secrets doctrine was improper because no state secrets would be revealed at trial inasmuch as Defendants could present no defense to their actions. The court disagrees with the logic of this argument. As expressed at the July 15, 2009 hearing, it is entirely conceivable that the state secrets doctrine could be invoked to dismiss an otherwise meritorious cause of action. In dismissing the 1998 case, the court held only that because the state secrets privilege prevented Defendants from providing a defense to Plaintiffs' claims, the case had to be dismissed. The court did not find that Plaintiffs' claims were without merit or that Plaintiffs would not be able to present evidence establishing their claims if they had proceeded to trial. Indeed, the court could not reach either the merits of Plaintiffs' claims or the merits of Defendants defenses, because the state secrets privilege prevented the parties from proceeding. The merit of an underlying claim of liability is not the only possible, or even likely, motivating cause of the assertion of a procedural bar. The plainest explanation is also one that is beyond debate: a procedural bar can be asserted simply because it may apply. There is, in fact, no imaginable procedural bar that cannot be used to defeat an otherwise-legitimate claim of liability. Statutes of repose or limitation commonly defeat otherwise sustainable claims. A failure to exhaust administrative remedies often defeats legitimate claims. A defect in the service of process divests the court of jurisdiction and prohibits an apparently meritorious case from proceeding. Likewise, the merit of the state secrets doctrine does not relate to the

15

merits of Plaintiffs' claims.[7]  Thus, whatever the Department of Defense report may have found with respect to Tenenbaum's alleged espionage-tinged behavior or Defendants' alleged discriminatory behavior is simply irrelevant as to whether the state secrets doctrine prevented Defendants from providing some or all of their defenses[8] in the first lawsuit.

Finally, the court cannot accept the last step of Plaintiffs' logic which, incidentally, is the only argument directly relevant to the fundamental question before the court, whether this action is precluded under the doctrines of *res judicata* and collateral estoppel.  Plaintiffs argue that because the state secrets doctrine, premised on so-called false affidavits, was improperly invoked, the 1998 lawsuit was not fully and fairly litigated and thus has no preclusive effect on this litigation.  Plaintiffs intimate that the very nature of the application of the state secrets doctrine precluded them from fully and fairly litigating the case,[9] and therefore, since the doctrine was invalidly asserted, this case cannot be barred.  The court disagrees.

_____

[7]Or, in response to how Plaintiffs' have phrased their argument, the merit of the state secrets invocation does not equate to the merit of Defendants' defense.

[8]Further, even if Plaintiffs were able to establish a *prima facie* case of discrimination, there are nonetheless defenses available to Defendants, and arguments which could be made to a jury in explanation of Defendants' behavior.  That one group of persons at the Department of Defense found Defendants actions to be improper or even, as Plaintiffs argue, legally discriminatory, does not mean that every rational jury would so find.  Of course, since the court found that Defendants could not present a defense without revealing state secrets, the case simply could not proceed to a jury.

[9]Under Plaintiffs' argument, *any* case in which the state secrets doctrine was invoked would not later be entitled to any preclusive effect because, in analyzing the applicability of the doctrine, a court would undoubtedly have resorted to a review *in camera* of sealed materials.

16

Even assuming, as suggested by Plaintiffs, that the state secrets doctrine was improperly invoked--even assuming that Defendants lied under oath,[10] that this court was misleaded into applying the doctrine and the Sixth Circuit was incorrect in affirming the court--Plaintiffs still cannot avoid the effect of *res judicata*. Indeed, that doctrine exists to avoid the very situation presented by this case: an unhappy litigant revisits the court complaining that the prior result was in error. Plaintiffs here cannot proceed on any theory of liability under their current complaint without a showing and a holding by this court that the prior lawsuit's result was wrong. The court cannot so hold unless Plaintiffs show that they did not have an opportunity to fully and fairly litigate the issue of the state secrets doctrine.

Fundamentally--first, last and always--this case and the 1998 lawsuit turn on procedural bars which have nothing, or almost nothing, to do with the merits to Plaintiffs' claims. The 1998 lawsuit was prevented by the procedural bar of the state secrets doctrine and this lawsuit is prevented by the procedural bar of *res judicata*. While the Department of Defense's report may have served, to some extent, to clear Plaintiff's name of various illegal activities,[11] it does not shed any light upon or in any way re-open

---

[10]As an overarching observation, however, the court believes that Plaintiffs' argument begs the question of whether Defendants' impure let's-try-to-avoid-liability motive in invoking the privilege prevented Plaintiffs from "fully and fairly" litigating the privilege. The argument, in other words, assumes the truth of the very proposition Plaintiffs attempt to prove: that Plaintiffs were in fact prevented from adequately litigating the question. But the truth is that the motive of a bar-asserting defendant, for good or ill, is not relevant to the ability of a party to litigate a privilege and therefore does not serve to prove the proposition even if the motive were undeniably evil.

[11]The cover letter to the Department of Defense report states that "the initial personnel security and counterintelligence investigation process was poorly handled and managed, although the appeal process ultimately exonerated Mr. David

the issue of the invocation of the state secrets doctrine.  In order to bypass the

preclusive nature of the court's prior holding, as affirmed by the Sixth Circuit, Plaintiffs

must show that the procedure employed by this court and the appellate court was

somehow infirm.  Arguing the merits of their 1998 claims, as Plaintiffs purport to

demonstrate by the Department of Defense report, does not show any deficiency in "the

quality, extensiveness, or fairness of *procedures* followed in prior litigation."  *Kremer*,

456 U.S. at 481 (quoting *Montana*, 440 U.S. at 164, n.11) (emphasis added).

    In granting Defendants' motion for summary judgment based on the effect of

state secrets privilege on the litigation, this court reviewed affidavits and relevant

documents, and considered the parties' briefing.  The Sixth Circuit, in affirming this

court's order granting Defendant's motion for summary judgment, held in pertinent part:

> Having reviewed the materials Defendants produced under seal, we agree
> with the district court that the state secrets doctrine applies because a
> reasonable danger exists that disclosing the information in court
> proceedings would harm national security interests, or would impair
> national defense capabilities, disclose intelligence-gathering methods or
> capabilities, or disrupt diplomatic relations with foreign governments.
> *Ellsberg*, 709 F.2d at 56-57; *United States v. Reynolds*, 345 U.S. 1, 10, 73
> S.Ct. 528, 97 L.Ed. 727 (1953) (holding that courts may accept the
> government's assertion of the state secrets privilege if they are satisfied
> that there is a "reasonable danger" that disclosing the evidence will
> expose information that "in the interest of national security, should not be
> divulged.").
>
> We further conclude that Defendants cannot defend their conduct with
> respect to Tenenbaum without revealing the privileged information.
> Because the state secrets doctrine thus deprives Defendants of a valid
> defense to the Tenenbaums' claims, we find that the district court properly

_____

Tenenbaum.  It is my belief that Mr. Tenenbaum is, and always has been, a dedicated,
loyal and professional civil servant in the service of our Nation."  (Pls.' Resp. Ex. 1.)

dismissed the claims.

*Tenenbaum v. Simonini*, 372 F.3d 776, 777 (6th Cir. 2004) (citations omitted).  Plaintiffs

have "received all the process that was constitutionally required."  *Kremer,* 456 U.S. at

483 (1982).  In so holding, the court "bear[s] in mind that no single model of procedural

fairness, let alone a particular form of procedure, is dictated by the Due Process

Clause."  *Id.*  Here, Plaintiffs submitted briefs both at the trial court level and on appeal

challenging the state secrets doctrine and received the benefit of two courts reviewing

and determining the issue.  There is no reason to doubt the quality, extensiveness, or

fairness of the *procedures* followed in the litigation of the 1998 lawsuit.  *Id.*

The Supreme Court has "stressed that '[t]he doctrine of *res judicata* is not a mere

matter of practice or procedure inherited from a more technical time than ours. It is a

rule of fundamental and substantial justice, 'of public policy and of private peace,' which

should be cordially regarded and enforced by the courts . . . ."  *Federated Dep't Stores,*

*Inc.*, 452 U.S. at 401 (quoting *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299

(1917)).  Plaintiffs' current action rests entirely on the alleged impropriety of prior

invocation of the state secrets doctrine.  Plaintiffs simply cannot proceed without a

finding that the court's previous dismissal was in error.  However, this court's dismissal

of the 1998 lawsuit and the Sixth Circuit's affirmation of the dismissal constitute final

adjudication on the issue of the propriety of the state secrets doctrine.  Relitigation of

that issue should be, and is, barred.  Accordingly, Defendants' motion must be granted

and this action must be dismissed.[12]

---

[12]In light of this conclusion, the court need not reach Defendants' alternative
arguments that (1) the complaint fails to state a claim on which relief can be granted

## III. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' "Motion to

Dismiss First Amended Complaint Or In the Alternative For Summary Judgment" [Dkt.

# 20] is GRANTED and that this action is DISMISSED WITH PREJUDICE.


          S/Robert H. Cleland                       
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated:  July 23, 2009


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 23, 2009, by electronic and/or ordinary mail.

          S/Lisa Wagner                           
          Case Manager and Deputy Clerk
          (313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\09-10612.TENENBAUM.resjudicata.5.wpd

---

and (2) the complaint was filed outside of the statute of limitations.